**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3149
_____


UNITED STATES OF AMERICA

v.

JOSE LUIS FLORES-MEJIA, a/k/a JOSE FLORES MEJIA,
a/k/a JOSE LUIS MEJIA, a/k/a MANUEL MENDEZ

Jose Luis Flores-Mejia,

                                        Appellant


_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-11-cr-00712-01)
District Judge:  Honorable Stewart Dalzell
_____


Submitted Under Third Circuit L.A.R. 34.1(a) on May 10, 2013
Argued En Banc on February 19, 2014


Before:  MCKEE, Chief Judge, RENDELL, AMBRO, FUENTES, SMITH,
FISHER, CHAGARES, JORDAN, HARDIMAN, GREENAWAY, JR.,
VANASKIE, SHWARTZ, SLOVITER and ROTH, Circuit Judges


(Opinion filed: July 16, 2014)

Robert Epstein, Esquire (**Argued**)
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

        Counsel for Appellant


Robert A. Zauzmer, Esquire (**Argued**)
Jeffery W. Whitt, Esquire
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

        Counsel for Appellee

---

O P I N I O N

---

**ROTH**, Circuit Judge:

Jose Luis Flores-Mejia appeals the sentence imposed on him for his conviction of the offense of reentry after deportation. His appeal raises the issue of what a defendant must do in order to preserve a challenge to the procedural reasonableness of a sentence. At the sentencing hearing, Flores-Mejia made a mitigation argument, based on his cooperation with the government. Flores-Mejia contends that his initial presentation of this argument is sufficient, without more, to preserve his claim that the District Court committed procedural error by failing, when it pronounced sentence, to give meaningful consideration to this argument. The government counters that Flores-Mejia's failure to object, at a time when the District Court could have promptly addressed it, did not preserve the issue for appeal and leaves his claim subject to plain error review.

We have decided that, to assist the district courts in sentencing, we will develop a new rule which is applicable in those situations in which a party has an objection based upon a procedural error in sentencing but, after that error has become evident, has not stated that objection on the record. We now hold that in such a situation, when a party wishes to take an appeal based on a procedural error at sentencing – such as the court's failure to meaningfully consider that party's arguments or to explain one or more aspects

2

of the sentence imposed – that party must object to the procedural error complained of after sentence is imposed in order to avoid plain error review on appeal.[1] Our panel holding in *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008),[2] differs from our holding today and is superseded.

## I. FACTS

Flores-Mejia, a citizen of Mexico, pled guilty to one count of reentry after deportation, in violation of 8 U.S.C. § 1326(a). This illegal reentry was in fact Flores-Mejia's sixth illegal entry into the United States. Flores-Mejia had an extensive criminal record with 18 prior convictions, including several for repeated assaults on his wife. As his attorney admitted at sentencing, "This man has an atrocious record." JA103. Based on a criminal history category of VI and an offense level of 21, including a 16-level enhancement for a prior violent crime, his Guidelines range was 77 to 96 months in prison.

In his sentencing memorandum, Flores-Mejia raised several grounds for downward departures and variances. At issue here is his argument that he cooperated with the government by providing information regarding a homicide and a prostitution ring. At the sentencing hearing, the District Court heard argument on a number of Flores-Mejia's grounds for mitigation and denied them. The parties then addressed Flores-Mejia's argument that his cooperation warranted a reduced sentence. Both the government and defense counsel made proffers on the issue. The government argued that the homicide in question had already been solved and that the information about the prostitution ring did not involve involuntary sex trafficking or children and so it fell outside the ordinary purview of federal law enforcement. For those reasons, the government asserted that the cooperation did not warrant a variance. Following this colloquy, the District Court stated: "Okay, thanks. Anything else?" There was no reply from either party; instead each side summed up its position on sentencing. On completion of the summations, the District Court proceeded to sentence Flores-Mejia to 78 months in prison. Defense counsel did not at that time object to the court's failure to rule on the request for variance based on the alleged cooperation, nor did she point out the District Court's failure to explicitly address or give further consideration to that argument.

---

[1] A party may of course make an objection to a procedural error at an earlier point as when, for example, a substantive request is denied and procedurally the defendant has objected to a lack of meaningful consideration of that request. Having already made an objection when the procedural error became evident, the defendant need not repeat the objection after sentence is imposed.

[2] In so holding, the panel in S*evilla* considered itself bound by our prior en banc decision in *United States v. Grier*, 475 F.3d 556 (2007) (en banc).

Flores-Mejia appealed, contending that his sentence is procedurally unreasonable because the District Court failed to sufficiently consider his argument that his attempts at cooperation warranted a lower sentence. Based on our decision in *Sevilla*, a divided panel of this Court agreed. *United States v. Flores-Mejia*, 531 F. App'x 222 (3d Cir. 2013). We then granted en banc review.

## II. PRESERVING A CLAIM OF PROCEDURAL ERROR FOR APPEAL

In *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006), we set forth a three-step framework for sentencing. First, a district court must calculate a defendant's Guidelines sentence as it would have before *United States v. Booker*, 543 U.S. 220 (2005). *Gunter*, 462 F.3d at 247. Second, a district court must "formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id.* (citation, quotation marks and alterations omitted). Third, a district court "[is] required to exercise [its] discretion by considering the relevant § 3553(a) factors . . . in setting the sentence [it imposes] regardless whether it varies from the sentence calculated under the Guidelines." *Id.* (internal citation, quotation marks, and alterations omitted).

To satisfy step three, the district court must "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012). Failure to give "meaningful consideration" to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing. *Id.* (internal citation omitted).

This error of failure to give meaningful consideration must be brought to the district court's attention through an objection. If a defendant fails to preserve the error for appeal by objecting, the authority of the court of appeals to remedy the error is "strictly circumscribed." *Puckett v. United States*, 556 U.S. 129, 134 (2009). However, Rule 52(b) of the Federal Rules of Criminal Procedure provides for limited relief: "A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."

The issue in this appeal is whether, in order to preserve the objection for appeal and to avert plain error review, a defendant must object after the sentence is pronounced to the district court's failure to meaningfully consider his argument.[3] In *Sevilla*, we held

---

[3] Of course, as we set out above, if at any prior point a district court had ruled on the request for a variance, the defendant could object to a lack of meaningful consideration of the request at that time and there would be no need to do so again after sentence was imposed.

4

that "the District Court's failure to address those issues [when sentence was pronounced] did not require Sevilla to *re*-raise them to avert plain error review of these omissions." *Sevilla*, 541 F.3d at 231. However, for the reasons that follow, we now hold that a defendant must raise any procedural objection to his sentence at the time the procedural error is made, *i.e.*, when sentence is imposed without the court having given meaningful review to the objection. Until sentence is imposed, the error has not been committed. At the time that sentence is imposed, if the objection is made, the court has the opportunity to rectify any error by giving meaningful review to the argument.

We are adopting this new rule for several reasons. First, we are dealing with a procedural objection to the sentencing process. We must appreciate the difference between a challenge to the substantive reasonableness of the sentence and a challenge to its procedural reasonableness. While a substantive objection to the sentence that a court will impose is noted when made and need not be repeated after sentencing, a procedural objection is to the form that the sentencing procedure has taken, *e.g.*, a court's failure to give meaningful review to a defendant's substantive arguments. *See United States v. Judge*, 649 F.3d 453, 458 (6th Cir. 2011). Unlike a substantive objection to a sentence, a procedural defect in a sentence may not occur until the sentence is pronounced, and, unless the objection is meaningfully dealt with earlier, no challenge to the sufficiency of the court's explanation can be made until that time. Simply put, a defendant has no occasion to object to the district court's inadequate explanation of the sentence until the district court has inadequately explained the sentence. Thus, the procedural objection can be raised for the first time only after the sentence is pronounced without adequate explanation.[4]

Second, we are satisfied that there are compelling reasons why objecting to procedural error after the sentence is pronounced would promote judicial efficiency. Objecting when sentence is pronounced permits the quick resolution of such errors. As the Supreme Court observed, "errors are a constant in the trial process," and when a defendant contemporaneously objects, the district court "can often correct or avoid the mistake so that it cannot possibly affect the ultimate outcome." *Puckett*, 556 U.S. at 134 (citation and quotation marks omitted); *see also United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010) ("[T]he sentencing judge, not the court of appeals, is in a superior position to find facts and judge their import under § 3553(a) in the individual case.")

---

[4] For this reason, the rule we adopt is consistent with Federal Rule of Criminal Procedure 51(b), *i.e.*, "A party may preserve a claim of error [not giving meaningful consideration to the defendant's argument] by informing the court—when the court ruling or order is made or sought [at imposition of sentence]—of the action the party wishes the court to take [to give meaningful review to defendant's argument in connection with sentencing], or the party's objection to the court's action [failure to give meaningful review to that argument] and the grounds for that objection [failure to give meaningful review to that argument]."

(internal quotation marks omitted) (quoting *United States v. Tomko*, 562 F.3d 558, 566 (3d Cir. 2009) (en banc)). Contemporaneous objection also advances the public interest because "[r]equiring the error to be preserved by an objection creates incentives for the parties to help the district court meet its obligations to the public and the parties." *United States v. Villafuerte*, 502 F.3d 204, 211 (2d Cir. 2007). By encouraging defendants to make objections before the court which is best equipped to resolve the errors efficiently and effectively, we are promoting better sentencing practices.

Third, requiring that the procedural objection be made at the time of sentencing prevents "sandbagging" of the court by a defendant who remains silent about his objection to the explanation of the sentence, only to belatedly raise the error on appeal if the case does not conclude in his favor. *See, e.g.*, *Puckett*, 556 U.S. at 134.

Our new rule is consistent with the holdings of most other circuit courts of appeals that have ruled on the issue. The First, Fifth, Sixth, Eighth, Ninth, Tenth, and D.C. Circuit Courts of Appeals all require a defendant to object when sentence is pronounced if a district court makes the procedural error of failing to adequately explain a sentence. *See, e.g.*, *United States v. Davila-Gonzalez*, 595 F.3d 42, 47 (1st Cir. 2010); *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009); *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc); *United States v. Rice*, 699 F.3d 1043, 1049 (8th Cir. 2012); *United States v. Rangel*, 697 F.3d 795, 805 (9th Cir. 2012); *United States v. Romero*, 491 F.3d 1173, 1177–78 (10th Cir. 2007); *United States v. Wilson*, 605 F.3d 985, 1033–34 (D.C. Cir. 2010).

Only the Fourth Circuit Court of Appeals does not consistently require the challenge to be raised immediately following the imposition of the sentence by the district court. *United States v. Lynn*, 592 F.3d 572, 578–79 (4th Cir. 2010). The court in *Lynn* reasoned that Rule 51 "does 'not require a litigant to complain about a judicial choice after it has been made.'" *Id.* at 578 (quoting *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009)).[5] In reaching its decision, the court in *Lynn* warned that "[r]equiring a party to lodge an explicit objection after the district court explanation would saddle busy district courts with the burden of sitting through an objection— probably formulaic—in every criminal case." *Lynn*, 592 F.3d at 578 (internal quotation marks and citation omitted).

Under the rule we adopt, there will of course be an objection to a district court's failure to give meaningful consideration to a procedural error in sentencing but it is

---

[5] See footnote 4, *supra*, for our position that the rule we adopt does not violate Rule 51(b). Note also, that although the Seventh Circuit Court of Appeals in some instances has not required an objection to a procedural error at the time sentence was imposed, *see, e.g.*, *United States v. Cunningham*, 429 F.3d 673 (7th Cir. 2005), it has not always done so. *See, e.g.*, *United States v. Anderson*, 604 F.3d 997, 1003 (7th Cir. 2010).

hardly a significant impediment to the efficient administration of justice.  Sentencing is a complex process, and a district judge at sentencing must meet numerous requirements. An objection at sentencing, even if sometimes time-consuming, serves the important purpose of reminding the judge of these requirements and allowing the judge to immediately remedy omissions or clarify and supplement inadequate explanations.  The rule adopted in *Lynn* and in *Sevilla* imposes a greater burden on busy district courts by depriving them of contemporaneous notice of errors and of the opportunity to correct them.  The burden of sitting through an objection at sentencing pales in comparison to the time and resources required to correct errors through a lengthy appeal and resentencing.[6] Our strong interest in judicial economy, heightened in these times of fiscal restraint and judicial budgetary concerns, weighs heavily in favor of a rule under which the defendant must contemporaneously object to concerns regarding the procedural reasonableness of a sentence.

For these reasons, we hold that, in a criminal prosecution, unless a relevant objection has been made earlier, a party must object to a procedural error after the sentence is pronounced in order to preserve the error and avoid plain error review. [7][8]

### III.  THE MERITS OF THE APPEAL

We have determined that, in order to preserve for appeal the issue of the lack of meaningful consideration of his argument on mitigation, Flores-Mejia should have objected after sentence was pronounced.  He did not, and thus, under the rule we now adopt, he did not preserve the issue for appeal.  An unpreserved issue is reviewed for

---

[6] Resentencing imposes a significant burden on district courts:  not only do they have to find time in their busy dockets to revisit errors that could have been resolved with a contemporaneous objection at the original sentencing but they also have the burden of reconvening the parties involved, including the defendant, attorneys, witnesses, and law enforcement authorities.  *See, e.g.*, *United States v. Williams*, 399 F.3d 450, 459 (2d Cir. 2005) (warning of the burdens of resentencing, including assuring the presence of the defendant, who "will often be serving a sentence at a distant location").

[7] Because defendants sentenced before the issuance of this opinion had not been warned that they had a duty to object to the sentencing court's procedural error after sentencing, we will not apply this new rule retroactively.

[8] To ensure that timely objections are made, we encourage district courts at sentencing to inquire of counsel whether there are any objections to procedural matters.  However, unlike the Sixth and Eleventh Circuit Courts of Appeals, we will not make this a requirement that district judges must follow.  *Contra United States v. Bostic*, 371 F.3d 865, 872 (6th Cir. 2004); *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990). We believe that the burden of objecting to errors remains with the parties.

plain error. An error is plain if it is "clear" or "obvious," "affects substantial rights," and "affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (quoting *United States v. Olano*, 507 U.S. 725, 732, 734 (1993)). An error "affects substantial rights" when it is prejudicial, that is, when it "affected the outcome of the District Court proceedings." *Id.* (quoting *Olano*, 507 U.S. at 734); *see also United States v. Marcus*, 560 U.S. 258, 262 (2010).

Because defendants sentenced before the issuance of this opinion had not been warned that they had a duty to object to the sentencing court's procedural error after sentencing, we will not apply this new rule retroactively and will, instead, review for abuse of discretion. Applying that standard, we have held that a district court abuses its discretion when it fails to give "meaningful consideration" to an argument advanced by the defendant.

Although it's a close issue, we conclude that the Court's question ("Ok, thanks. Anything else?") is not on this record sufficient to reflect that meaningful consideration was given to Flores-Mejia's cooperation argument. The circumstances here are very near those we faced in *Sevilla*, in which we held that the District Court's general statement that it had "considered all the § 3553(a) factors" was not enough to show meaningful consideration of a specific argument. While the question put by the District Court here, in the context of the colloquy as a whole, might be read to reflect that the court had heard and considered the specific argument about cooperation, there was no specific ruling provided by the court or any other effort to address the argument.

## IV. CONCLUSION

For the foregoing reasons, we will vacate the sentence and remand to the District Court for resentencing.

8

FUENTES, *concurring in part and concurring in the judgment*.

I agree with the majority that it would be unjust to employ the Court's new rule retroactively, and that we must therefore apply the rule articulated in *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008), to the case at hand. Furthermore, I agree that the record before us does not suggest that the district court meaningfully considered Flores-Mejia's cooperation argument. Therefore, I concur in the decision to remand for resentencing.

But like the dissenters, I continue to believe that *Sevilla* should be applied not just to those sentenced before today's opinion, but also going forward. As Judge Greenaway notes in his compelling opinion, such an outcome is dictated by the plain language of Rule 51 of the Federal Rules of Criminal Procedure.

GREENAWAY, JR., *Circuit Judge*, dissenting with whom SMITH, SHWARTZ and SLOVITER, join, and with whom FUENTES, *Circuit Judge*, joins in part.

In our system of jurisprudence, we examine our principle, consider the facts and the law and make decisions. The venerable principle of stare decisis requires reexamination not when we come up with a better mouse trap but when there is a principled basis for change. *See Arizona v. Rumsey*, 467 U.S. 203, 212 (1984) ("[A]ny departure from the doctrine of stare decisis demands special justification."); *Planned Parenthood of Se. Pennsylvania v. Casey*, 505 U.S. 833, 854 (1992) ("The obligation to follow precedent begins with necessity, and a contrary necessity marks its outer limit. . . . At the other extreme, a different necessity would make itself felt if a prior judicial ruling should come to be seen so clearly as error that its enforcement was for that very reason doomed."). Indeed, "the very point of stare decisis is to forbid us from revisiting a debate every time there are reasonable arguments to be made on both sides." *Morrow v. Balaski*, 719 F.3d 160, 181 (3d Cir. 2013) (Smith, J., concurring).

Our Court, in a unanimous precedential opinion, adopted a procedure for district courts to follow at sentencing a scant six years ago. *See United States v. Sevilla*, 541 F.3d 226, 230 (3d Cir. 2008). Now, without intervening Supreme Court precedent and without a majority of our sister courts, we not only reexamine but indeed create a new procedure that flies in the face of Federal Rule of Criminal Procedure 51, with no compulsion or mandate to do so.

1

In its attempt to promote judicial economy, the majority ignores the plain language of Rule 51, misreads the state of the law of our sister circuits, [1] and invokes a

---

[1] The majority would have us believe that a tsunami of well-reasoned opinions has swept across our sister circuits, requiring us to question our own precedent; however, close reading of case law reveals that this assessment is mistaken. For instance, the D.C. Circuit's explications provide no succor to the majority's view, given that the court has rendered internally inconsistent decisions. *Compare, e.g.*, *United States v. Wilson*, 605 F.3d 985, 1034 (D.C. Cir. 2010) ("Where a defendant failed to make a timely objection to the alleged procedural error in the district court, however, our review is for plain error."), *with United States v. Tate*, 630 F.3d 194, 197-99 (D.C. Cir. 2011) (applying the "abuse of discretion" standard to review a claim that a "sentence is procedurally unreasonable, in violation of due process and the requirement of section 3553(a) that a sentence be no greater than necessary") *and United States v. Bras*, 483 F.3d 103, 113 (D.C. Cir. 2007) (applying the reasonableness standard of review by rejecting the government's insistence that the court "may review this claim only for 'plain error,' because Bras did not . . . object that the court did not adequately consider the factors set forth in § 3553" (internal quotation marks omitted)). The majority also omits cases that have unequivocally rejected the approach adopted today. *See, e.g.*, *United States v. Castro-Juarez*, 425 F.3d 430, 434 (7th Cir. 2005) ("Since the district court will already have heard argument and allocution from the parties and weighed the relevant § 3553(a) factors before pronouncing sentence, we fail to see how requiring the defendant to then protest the term handed down as unreasonable will further the sentencing

2

fundamental change to our sentencing procedures that is both unwarranted and difficult to square with the Supreme Court's post-*Booker* jurisprudence. For this reason, I respectfully dissent.[2]

## I. The Federal Rules of Criminal Procedure

Under the Rules Enabling Act, Congress vested the Supreme Court of the United States with the authority to promulgate the Federal Rules of Criminal Procedure. *See Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406-07 (2010). These rules, which are then enacted by Congress, are legislation and therefore transcend a mere rule of court. Fed. R. Crim. P. 2; *see also* Fed. R. Crim. P. 1(a)(1) ("These rules govern the procedure in all criminal proceedings in the United States district courts, the United States courts of appeals, and the Supreme Court of the United States.").

---

process in any meaningful way."). Finally, the case law cited by the majority in support of their new rule, except for *United States v. Vonner*, 516 F.3d 382, 391 (6th Cir. 2008) (which is addressed below), completely fails to take into account Rule 51's procedure for preserving an issue for appeal. As a result, these cases do not provide a reasoned analysis supporting the majority's approach.

[2] *Sevilla* provided clear guidance in this post-*Booker* world, the District Court considered all of the arguments raised at sentencing. The Government determined that the information Flores-Mejia had provided did not warrant a departure motion under U.S.S.G. 5K1.1. When the District Judge said "anything else", he had already heard from both sides. Therefore, I would affirm the sentence.

3

Because the Federal Rules of Criminal Procedure are legislative enactments, "we turn to the 'traditional tools of statutory construction,' . . . in order to construe their provisions." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 (1987)). "We begin with the language of the Rule itself." *Beech Aircraft Corp.*, 488 U.S. at 163.

Federal Rule of Criminal Procedure 51, which governs how parties preserve claims for appeal, states that "[a] party may preserve a claim of error by informing the court--when the court ruling or order is made or sought--of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." Fed. R. Crim. P. 51(b).

Textually, Rule 51(b) contemplates that parties may liberally preserve claims for appeal. The rule states that a party preserves a claim by informing the court "the action the party wishes the court to take . . . when the court ruling or order is made *or sought*[.]" *Id.* (emphasis added). While "made" denotes that a request (*e.g.*, objection) can be raised after the order, the "or sought" language anticipates a party preserving a claim *prior* to the court's ruling. "To seek" means "to ask for" or "to try to obtain," which necessarily takes place prior to the court's ruling. *See, e.g.*, Webster's Ninth New Collegiate Dictionary 1063 (1983) ("to ask for"); The Random House Dictionary of the English Language 1733 (2d ed. 1987) ("To try to obtain").

The majority gives no more than lip service to the text of Rule 51(b). In a footnote, the majority claims that the new rule implemented by the court today is "consistent" with Rule 51(b) on grounds that the procedural objection can be raised

4

for the first time only after the sentence is pronounced without adequate explanation. [3] Such a reading can be sustained only by conflating "objection" with "the action the party wishes the court to take", which defies an established canon of statutory interpretation that terms connected by a disjunctive are to be given separate meaning. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("Canons of construction ordinarily suggest that terms connected by a disjunctive be given separate meanings[.]"). Under the plain language of Rule 51, an objection—which can indeed only take place after the court's ruling—is only one way, not "the" way, to preserve a claim. The rule expressly provides that parties may also preserve a claim for appeal when they inform the court "of the action the party wishes the court to take[.]" Fed. R. Crim. P. 51(b).

That is exactly what Flores-Mejia has done here. In his sentencing memorandum dated July 19, 2012 (App. 51, 55, 59), and again at the sentencing hearing on July 26, 2012, defense counsel urged the Court to "consider [Flores-Mejia's]

---

[3] This line of reasoning follows the approach developed by Judge Sutton's majority opinion in *Vonner*, which (unsurprisingly) also pays little homage to the text of Rule 51. *Vonner*, 516 F.3d at 391. The opinion there acknowledges Rule 51. *Id.* at 391. But the court then supports its application of plain error review of the district court's failure to address the four grounds Vonner specifically raised for a downward variance by positing a hypothetical where the mistake had never been presented to the district court. *Id.* at 392. The hypothetical, however, lends no support because it is factually distinguishable from what actually occurred in the case.

5

actions in proffering [to the Government]." (App. 102-03.) It is settled law that consideration of § 3553(a) factors requires the District Court to supply an explanation. *See United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012) (holding that in order to consider the relevant sentencing factors set forth in 18 U.S.C. § 3553(a), the District Court must "acknowledge and respond to any properly presented sentencing argument") (internal quotation marks omitted); *see also United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007) ("The record must disclose meaningful consideration of the relevant statutory factors[.]"). Because Flores-Mejia "sought" the District Court to "consider" § 3553(a) factors, his claim was preserved under Rule 51, regardless of whether the District Court ruled upon his request.

What the majority calls an "objection" is in reality an "exception," which Rule 51(a) expressly declared as "unnecessary." Fed. R. Crim. P. 51(a); *see also United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009) (Easterbrook, J.) ("We put 'object' in scare quotes because remonstration with the judge is not an objection as usually understood. . . . Such a complaint is properly called, not an objection, but an exception."). Prior to the adoption of Rule 51(a), lawyers followed a common law tradition of taking "exception" to an adverse ruling to preserve an issue. Robert E. Keeton, *Trial Tactics and Methods* § 4.12, at 190-91 (2d ed. 1973). This tradition was a way of creating a record for effective appellate court review. *Id.* When verbatim transcripts became available for modern judicial proceedings, the formalistic "exception" requirement was no longer necessary for appellate courts to effectively review cases. *See* Benjamin K. Raybin, Note, *"Objection: Your Honor is Being Unreasonable!" - Law and Policy Opposing the Federal*

6

*Sentencing Order Objection Requirement*, 63 Vand. L. Rev. 235, 252 (2010). It was for this reason that the practice of taking exceptions was abandoned in civil cases when Congress approved Federal Rule of Civil Procedure 46 (in 1937) and the Federal Rules of Criminal Procedure 51 (in 1944). *Id.*; *see also Bartlett*, 567 F.3d at 910 ("[T]he rules do not require a litigant to complain about a judicial choice after it has been made."); *United States v. Cunningham*, 429 F.3d 673, 679-80 (7th Cir. 2005) (Posner, J.) ("[A] lawyer in federal court is not required to except to rulings by the trial judge.") (citing Fed. R. Crim. P. 51(a)).

The majority insists that a party must re-raise any procedural objection after the pronouncement of the sentence to avoid plain error review. No such requirement appears in Rule 51. In adopting this "new rule," the majority renders superfluous both Rule 51(a)'s elimination of the practice of taking exceptions and Rule 51(b)'s disjunctive text "or sought." Although courts are to avoid a construction of a statute that would make another provision superfluous, the majority ignores this basic rule of statutory construction. *See Hohn v. United States*, 524 U.S. 236, 249 (1998) (noting its "reluctan[ce] to adopt a construction making another statutory provision superfluous"); *see also Colautti v. Franklin,* 439 U.S. 379, 392 (1979) (characterizing as "elementary" the "canon of construction that a statute should be interpreted so as not to render one part inoperative").

Rule 51 cannot be deemed superfluous based on the procedural/substantive dichotomy. While it is true that this Court has developed jurisprudence highlighting the difference between procedural and substantive reasonableness claims, the Federal Rules of Criminal Procedure do not make such a distinction. The majority's reading carves out certain

7

categories of claims that cannot be preserved when the ruling "is sought", failing to give meaning to each word of Rule 51(b). In my view, this reading cannot survive scrutiny by the Supreme Court. *See Shady Grove Orthopedic Associates, P.A.*, 559 U.S. at 406 (interpreting the Federal Rules of Civil Procedure stating that courts "cannot contort its text[.]"); *Reiter*, 442 U.S. at 339 ("In construing a statute we are obliged to give effect, if possible, to every word Congress used.").

## II. Judicial Economy

The majority attempts to rationalize its reading of Rule 51 by pointing to judicial economy. While the concern is noble, the effect of the new rule on judicial economy is at best ambiguous.

First, contrary to the majority's concern about defense counsel "sandbagging" district courts, parties already have an incentive to bring errors to the district court's attention even when a claim is preserved.[4] This is because they have a better shot at correcting errors there than before an appellate court that must review under a deferential, reasonableness standard.

---

[4] In *Puckett v. United States*, the Supreme Court instructed that a party cannot "remain[] silent" and "sandbag" a court by failing to object and avert plain error review. 556 U.S. 129, 135 (2009). Unlike *Puckett*, where the defendant never raised the issue at all in the district court, when a party raises his argument in writing prior to sentencing and orally advocates for particular action at the sentencing hearing, it is inaccurate to contend that the party is sandbagging the sentencing court and that the issues he squarely raised are subject to plain error review.

8

*United States v. Tomko*, 562 F.3d 558, 564 (3d Cir. 2009) (assessing the reasonableness of a sentence under the deferential "abuse of discretion" standard of review). Under the reasonableness standard, an appellate court reverses only when the district court's decision cannot be located within the range of permissible decisions or is based on a legal error or clearly erroneous factual finding. *See id.* While the plain error standard certainly heightens the penalty for failure to preserve an issue, the majority's approach does not explain why an abuse of discretion standard cannot deter parties from "playing possum." Certainly, there is no evidence, anecdotal or otherwise, to support the majority's assessment.

Second, requiring an objection for preservation purposes will slow down the process in the initial district court proceeding, even when it may not be necessary. As the Seventh Circuit puts it, "[t]o insist that defendants object at sentencing to preserve appellate review for reasonableness would create a trap for unwary defendants and saddle busy district courts with the burden of sitting through an objection—probably formulaic—in every criminal case." *United States v. Castro-Juarez*, 425 F.3d 430, 433-34 (7th Cir. 2005); *see also United States v. Lynn*, 592 F.3d 572, 578-79 & n.3 (4th Cir. 2010) (observing that the objection requirement "could degenerate into a never-ending stream of objections after each sentencing explanation"). All this presumably after a full airing out of the issue at hand both in the papers and at argument. This concern is especially alarming because substantive and procedural reasonableness claims are not easily divisible. *Compare Rita v. United States*, 551 U.S. 338, 365 (2007) (Stevens, J., concurring) (observing that *Booker* "plainly contemplated that reasonableness review would contain a substantive [as well as

9

procedural] component"), *with Rita*, 551 U.S. at 382-83 (Scalia, J., concurring in part and concurring in the judgment) (observing that reasonableness of sentencing ruling should be reviewed on purely procedural grounds). *See also Vonner*, 516 F.3d at 398 (Clay, J., dissenting) ("[P]rocedural reasonableness and substantive reasonableness are simply two aspects of the overall reasonableness." (internal quotation marks omitted)). The difficulty of parsing out the differences between substantive and procedural claims incentivizes counsel to complain about every ruling made by the district court.

Third, requiring an objection to preserve issues for an appeal promises to give birth to an industry of collateral "ineffective assistance of counsel" claims that are likely to arise out of defense counsel inevitably failing to object after sentencing in some cases. *See, e.g.*, Raybin, Note, 63 Vand. L. Rev. at 262 ("By creating a new procedure for attorneys to follow, courts also create a new way in which attorneys can render ineffective assistance of counsel."). This is not a mere theoretical inquiry, given our Court's previous ruling that failing to object in certain circumstances may constitute ineffective assistance of counsel. *See, e.g.*, *United States v. Otero*, 502 F.3d 331, 336 (3d Cir. 2007) ("There is no sound strategy in counsel's failure to object to the 16-level enhancement in the PSR. . . . We therefore find counsel's performance deficient.").[5]

To be sure, requiring procedural reasonableness objections may facilitate speedier resolution of errors in

---

[5] Our discussion does not address the circumstances when defense counsel fails to raise a claim for a court to consider in writing and before actual sentencing.

certain circumstances, sparing everyone the lengthy process of appellate review.  If alacrity be our keystone, I shall step aside, but in the grand scheme of our criminal justice system, judicial economy should not and cannot rule our considerations.

## III. Appellate Review Post-*Booker*

Finally, the holding rendered by the majority today represents a fundamental change in our jurisprudence that is difficult to square with the Supreme Court's post-*Booker* jurisprudence.

Our *Booker* obligation is to "review sentencing decisions for unreasonableness."  *United States v. Booker*, 543 U.S. 220, 264 (2005).  In keeping with this guidance, this Court has developed a two-part test, reviewing for "procedural error at each step of the district court's sentencing process . . .  then we move forward to the second stage [reviewing] the substantive reasonableness of the sentence."  *Begin*, 696 F.3d at 411; *see also Rita*, 551 U.S. at 356 (instructing that a sentencing court should "set forth enough to satisfy the appellate court that [he] has considered the parties' arguments and has a reasoned basis for exercising his own legal decision-making authority").

Under the plain error review adopted by the majority today,[6] our hands will be tied when the district court fails to

---

[6] An error is plain if it is "clear" or "obvious," "affects substantial rights," and "affects the fairness, integrity or public reputation of judicial proceedings."  *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993) (alterations and

11

produce enough of a record for meaningful procedural review, for we will have no basis to ascertain whether a potential error could have "affected the outcome of the district court proceedings." *Dragon*, 471 F.3d at 505 (quoting *Olano*, 507 U.S. at 732). This is plainly at odds with the Supreme Court's instructions that the record "make[] clear that the sentencing judge considered the evidence and arguments." *Rita*, 551 U.S. at 359.

For example, assume that the district court commits a procedural error—by incorrectly calculating the defendant's advisory Guidelines range.[7] Let us even assume that the district court was generous enough to ask, after the imposition of the sentence, if counsel had any objections. Defense counsel answered "no" to that question. Under the majority's hard-line rule, the mere fact that the defense counsel answered "no" absolves the district court of what we have time and time again re-affirmed as the district court's responsibility under *Gunter*. This is particularly alarming because of the unique, two-step review process developed in our circuit. Our substantive review is "highly deferential,"

---

internal quotation marks omitted)). An error "affects substantial rights" when it is prejudicial, that is, when it "affected the outcome of the district court proceedings." *Dragon*, 471 F.3d at 505 (quoting *Olano*, 507 U.S. at 734).

[7] Correct calculation of the defendant's advisory Guidelines range is the first procedural step mandated by our seminal post-*Booker* opinion. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) ("[O]ur post-*Booker* precedent instructs district courts . . . to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.") (internal citations omitted).

only because of "our insistence, as part of our procedural review, that the district court produce a record sufficient to demonstrate its rational and meaningful consideration of the § 3553(a) factors." *Begin*, 696 F.3d at 411. The majority's opinion strips future panels of meaningful authority to ensure that district courts follow the *Gunter* steps, while leaving the deferential substantive review standard intact. In effect, this approach undermines our ability to "review sentencing decisions for unreasonableness." *Booker*, 543 U.S. at 264.

The insistence that a claim be lodged "contemporaneously" with a sentencing decision exacerbates the problem. The majority's approach, in essence, picks a narrow and arbitrary point in time at which a defense counsel must raise (or in some instances, re-raise) a point, building an additional stricture that defeats a defendant's ability to successfully appeal. Sentencing proceedings are highly charged and fraught with emotion, particularly after the sentence is imposed. It is unwise to burden counsel with the additional obligations to engage in a reasoned analysis of the district court's sentencing explanation and then interpose an objection that was already asserted, all while attending to an emotional client and raising residual issues, like surrender dates and place of incarceration.

Under the majority's framework, future panels of this Court will be forced to make a difficult choice when faced with a district court record that is plainly at odds with our instructions in *Gunter*: (1) apply plain error review and produce rulings that are likely to be at odds with the guidance from the Supreme Court; or (2) stretch the meaning of "plain error" to ensure that this Court follows the Supreme Court's post-*Booker* jurisprudence. *Begin*, 696 F.3d at 411.

13

The post-*Vonner* jurisprudence from the Sixth Circuit gives little reason for optimism.  In *U.S. v. Wallace*, for instance, the Sixth Circuit was asked to review a record from the District Court that did not "specifically mention any of the 3553(a) factors."  597 F.3d 794, 804 (6th Cir. 2010).  Even after acknowledging that "plain error review should be extremely deferential to the sentencing judge", the court found that the case "must be remanded for re-sentencing."  *Id.* But as Judge McKeague's concurring opinion insightfully points out, it is untenable to conclude that the district court's lack of explanation impugned the "fairness, integrity or public reputation" necessary to constitute plain error.  597 F.3d at 811 (McKeague, J., concurring).

I end where I began.  Stare decisis counsels against "overrul[ing] our circuit precedent just to move from one side of the conflict to another."  *United States v. Conner*, 598 F.3d 411, 414 (7th Cir. 2010) (en banc).  Yet, despite the plain text of Rule 51(b) and the absence of any intervening authority from the Supreme Court, the majority jumps to the other side. What could confuse our district court colleagues more than revisiting matters without good cause to do so and establishing a new procedure that digress from congressionally sanctioned rules with no substantive or procedural infirmity?  I cannot partake in such an enterprise, and therefore respectfully dissent.

14